IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| GENE V. MARTIN, JR., <br><br> Petitioner, <br><br> vs. <br><br> NANCY DAHLSTROM, Commissioner, Alaska Department of Corrections,[1] <br><br> Respondent. | No. 3:20-cv-00174-JKS <br><br> MEMORANDUM DECISION |

Gene V. Martin, Jr., a former state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. At the time he filed his Petition, Martin was in the custody of the Alaska Department of Corrections ("DOC") and incarcerated at Wildwood Correctional Complex. The records of the DOC indicate that Martin was released to supervised custody on July 28, 2020. *See* https://vinelink.vineapps.com/search/AK/Person, Inmate No. 136263. Martin has filed a change of address with the Court that lists a private address. Docket No. 8. Respondent has answered, and Martin has not replied.

---

[1] Because it appears that Martin has been released on post-release supervision, Nancy Dahlstrom, Commissioner, Alaska Department of Corrections, is substituted for Shannon McCloud, Superintendent, Wildwood Correctional Complex. FED. R. CIV. P. 25(c); Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts; *Stanley v. Cal. Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994).

-1-

## I. BACKGROUND/PRIOR PROCEEDINGS

On February 22, 2008, Martin, along with three co-defendants, was charged with second-degree and fourth-degree misconduct involving a controlled substance for manufacturing methamphetamine and possessing methamphetamine precursor chemicals following the execution of a search warrant at a residence that Martin was visiting. That search warrant was largely based on the testimony of a state trooper who walked up to the residence, looked through a narrow opening in the window blinds, and observed a number of supplies that are commonly used for making methamphetamine. Martin was also charged with second- and third-degree misconduct involving a weapon and second-degree theft based on a stolen revolver found in his jacket upon arrest. The co-defendants' cases were later severed prior to trial.

Martin filed multiple pre-trial motions to suppress, arguing that the state trooper's actions constituted an illegal search in violation of the Fourth Amendment and the Alaska Constitution. After conducting an evidentiary hearing where two troopers testified, the court denied the suppression motion, concluding that Trooper Mike Ingram was in a place where he had a right to be (a common walkway) when he looked through the window; accordingly, the court held that Ingram's actions did not constitute a search.

Martin also asked the superior court to conduct an *in camera* review of the personnel file of every officer and other law enforcement employee who would be a witness in his case. In support of the request, Martin relied on the Alaska Court of Appeal's decision in *March v. State*, 859 P.2d 714, 718 (Alaska Ct. App. 1993), in which the appellate court indicated that an *in camera* inspection of an officer's personnel file would be warranted if "the party seeking [disclosure] has a good faith basis for asserting that the materials in question may lead to the disclosure of favorable evidence." Martin averred, without specific facts or supporting evidence, that Trooper Ingram had previously obtained search warrants by lying to magistrate judges, and that Ingram and another trooper involved in his case had once planted evidence on an innocent person. The court ultimately denied that request as well.

Martin proceeded to a jury trial in April 2009. On direct appeal of his conviction, the Alaska Court of Appeal laid out the following facts underlying the charges against Martin and the evidence presented at trial:

> On February 17, 2008, a loss prevention officer working at the Fred Meyer store in Wasilla contacted Trooper Mike Ingram. The loss prevention officer informed Trooper Ingram that a group of three individuals appeared to be interested in various items that are commonly used in the manufacture of methamphetamine.
> Ingram arrived at the store while the individuals were still there, and the loss prevention officer identified some of those individuals to Ingram. Trooper Ingram then followed two of the people as they left the Fred Meyer store, joined two other people in a pickup truck, and drove to 405 North Old Glenn Highway, the site of a multi unit residence. There were five residential units at this address; because Trooper Ingram had to drive past the address to remain undetected, he did not see which of the five units the suspects entered.
> Ingram requested the assistance of other law enforcement officers, and then he and the backup officers waited at the building (watching the suspects' car and apparently hoping that one or more of the four suspects would emerge). After waiting for approximately two hours, Ingram approached the structure, walked onto the deck or walkway adjacent to the building, and looked through the window of the first unit he came to.
> This window had blinds, and the blinds were closed. But through a crack in the closed blinds (an opening created by a broken piece of blind), Ingram spotted various items used in making methamphetamine: several bottles of the fuel additive "HEET", Pyrex glassware, a container of solvent, and tubing. Ingram also noticed a slight chemical odor.
> After making these observations, Ingram returned to his patrol car and telephonically obtained a search warrant for this residential unit. During the execution of this warrant, Gene Martin and three companions were arrested inside the residence.

*Martin v. State*, 297 P.3d 896, 897-98 (Alaska Ct. App. 2013).

At the conclusion of trial, the jury convicted Martin of the controlled substance counts but acquitted him of the gun-related charges. Martin was sentenced to an aggregate term of 18 years' imprisonment.

Through counsel, Martin appealed his conviction, arguing that Trooper Ingram's act of approaching the residence and peering through the window constituted an illegal search in violation of the Fourth Amendment and the Alaska Constitution. Martin also argued that the trial court erred in denying Martin's request to conduct an *in camera* review of the personnel files of the testifying officers.

-3-

In a reasoned, published opinion, the Court of Appeal unanimously affirmed the judgment against Martin. *Martin*, 297 P.3d at 907. Agreeing with the superior court that Alaska law supported that Ingram was entitled to approach the apartment by means of the walkway, *id.* at 897-88, the appellate court focused on whether Ingram acted lawfully when he looked in the window, *id.* at 899-900. Based on Trooper Ingram's testimony, in which he said that the crack in the blinds was large enough that he could readily see inside the well-lit residence while he was standing next to the window, and the fact that Ingram reasonably suspected, based on the observations at Fred Meyer's, that the group of people he followed to the residence had just bought drug manufacturing supplies into one of the units, the Court of Appeals concluded, "Because Ingram was standing in a public vantage point (the deck or walkway directly adjacent to the apartment) when he looked through the window, his observation of the methamphetamine supplies inside the apartment was obtained lawfully." *Id.* at 900. The appellate court also upheld the trial court's denial of Martin's discovery request, noting that Martin conceded on appeal that he had no specific facts to support his accusations of misconduct. *Id.* at 901.

Martin petitioned for hearing in the Alaska Supreme Court, which was granted. The Supreme Court ordered full briefing (including an *amicus* brief from the Alaska Public Defender Agency) and heard oral argument, after which it dismissed the petition for hearing as improvidently granted. The United States Supreme Court then denied Martin's petition for certiorari without comment on October 6, 2014. *Martin v. Alaska*, No. 14-5672, 574 U.S. 909, 909 (2014).

While Martin's petition for certiorari was pending, he filed in the Alaska Superior Court a *pro se* petition for post-conviction relief under Alaska Criminal Rule 35.1 dated August 8, 2014. *See* https://records.courts. alaska.gov/ (*In re Martin v. State*, 3PA-14-02193CI). Counsel was subsequently appointed to represent him, and an amended application was filed on January 11, 2017. *Id.* In the amended application, Martin claimed that he had newly-discovered

-4-

evidence of his innocence and that his trial counsel was ineffective. Following an evidentiary hearing, the Superior Court denied Martin's application for relief on March 1, 2019. *Id.*

Through counsel, Martin appealed the denial of post-conviction relief on April 8, 2019. *See* http://www.appellate.courts.state.ak.us/ *(Martin v. State*, A13404). The records of the Alaska Appellate Courts indicate that Martin's appeal is still pending in the Alaska Court of Appeals and currently in the "briefing stage." *Id.*

Martin then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court dated July 17, 2020. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1),(2). Pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the U.S. District Courts, this Court reviewed the initial Petition at Docket No. 1 and noted that, although his unconstitutional search and seizure claim had been thoroughly exhausted in the state courts on direct appeal, his ineffective assistance of counsel claim was still pending in the Court of Appeal and thus not yet exhausted. Docket No. 3. In response to this Court's Order, Martin elected to voluntarily dismiss his unexhausted ineffective assistance claim and proceed solely on the exhausted illegal search and seizure claim. Docket No. 4 ("Petition"). Respondent has answered the Petition, which is now ripe for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Martin argues, as he did before state courts on direct appeal, that Trooper Ingram violated his Fourth Amendment right to be free from unreasonable searches and seizures when Ingram stepped onto a walkway in front of the apartment Martin was in and looked inside the apartment through an opening in the blinds.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,"

-5-

Case 3:20-cv-00174-JKS   Document 13   Filed 12/17/20   Page 5 of 10

§ 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state

-6-

Case 3:20-cv-00174-JKS   Document 13   Filed 12/17/20   Page 6 of 10

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Martin has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

## IV. DISCUSSION

A.   *Mootness*

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."). If an event occurs subsequent to the filing of a lawsuit which deprives a court of the ability to provide meaningful relief, the case

-7-

becomes moot and is subject to dismissal. *See United States v. Alder Creek Water Co.*, 823 F.2d 343, 345 (9th Cir. 1987) ("A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries."). Similarly, a claim for habeas relief becomes moot when the controversy between the parties is no longer alive because the party seeking relief has obtained the relief requested. *See*, *e.g.*, *Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (a claim is moot when the court no longer has power to grant the requested relief).

As previously mentioned, the record before this Court indicates that Martin has been released from prison. However, a petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison. Rather, the matter will remain a live case or controversy if there remains "some concrete and continuing injury" or "collateral consequence" resulting from the conviction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). The Supreme Court has made clear that courts are to "presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur)." *Id*. at 7-8 (citing *Sibron v. New York*, 392 U.S. 40, 55-56 (1968)). This presumption of collateral consequences "acknowledge[s] the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences." *Sibron*, 392 U.S. at 55.

Moreover, a petitioner who has been released on parole and is serving a term of supervised release is considered "in custody" for purposes of 28 U.S.C. § 2254. *Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963). Accordingly, because Martin is still in the custody of DOC and, in any event, still subject to collateral consequences of his conviction, Martin's Petition has not been rendered moot by his release from prison.

B.  *Merits*

Martin argues that his conviction was obtained by the use of evidence gained pursuant to Trooper Ingram's unconstitutional search. But, as Respondent argues, any challenge to the denial of Martin's suppression motion is precluded by the Supreme Court's decision in *Stone v.*

-8-

*Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,[2]" federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed. *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).

The Ninth Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See Moormann v. Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005). "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Oritz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). Alaska provides such an opportunity, AK. R. CRIM. P. 37(c); ALASKA CONST. art. I, § 14. Indeed, the record reflects that the state trial court held a hearing at which defense counsel was afforded the opportunity to be heard, and the underlying claim was briefed before and thoroughly considered by the Alaska Court of Appeals, which issued a reasoned decision rejecting the claim on its merits. Consequently, Martin's illegal search and seizure claim is not cognizable on federal habeas review, and he is not entitled to federal habeas relief.

V. CONCLUSION AND ORDER

Martin is not entitled to federal habeas relief.

---

[2] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 17, 2020.

            s/James K. Singleton, Jr.
            JAMES K. SINGLETON, JR.
            Senior United States District Judge